Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | W. Thomas Rosemond Jr. |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7823 | **DATE** | 2/28/2001 |
| **CASE TITLE** | Objectwave Cor. Vs. Authentix Network | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Magistrate Judge's <u>Report</u> recommending that the District Judge issue a preliminary injunction in favor of the Plaintiff and against the Defendant is hereby entered of record.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 0 1 2001 | 13 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| SEC/CAL | courtroom deputy's initials | 01 FEB 28 PM 2:32 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAR - 1 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OBJECTWAVE CORP., )
        )
        Plaintiff, ) Case No. 00 C 7823
        )
    V.  ) Chief Judge Aspen
        )
AUTHENTIX NETWORK, INC., )
        )
        Defendant. )

TO: Chief Judge Marvin E. Aspen
    United States District Court

### REPORT AND RECOMMENDATION

W. Thomas Rosemond, Jr.
United States Magistrate Judge

Before the Court are <u>Defendant's Motion to Strike Plaintiff's Emergency Motion for Injunctive Relief and Sanctions</u> and <u>Plaintiff's Emergency Motion for Injunctive Relief</u>. Although Plaintiff's motion is not denominated as a motion for issuance of a preliminary injunction, the motion's prayer for relief clearly seeks such relief, <u>to-wit</u>:

> WHEREFORE, Plaintiff prays for this
> court to issue a preliminary and
> permanent injunction....[1]

At the injunction hearing, the attorneys of record operated under the belief that a preliminary injunction was being sought by the plaintiff. Evidence was presented and received. Oral argument

---

[1] Docket Entry No. 5, at 4.

of counsel was heard. Additionally, defense counsel was offered the opportunity to agree to a several-day stay of the impending sale of the Defendant and declined the invitation. Accordingly, for all of the above reasons, we treat plaintiff's emergency motion as a motion for issuance of a preliminary injunction. For the reasons stated below, <u>Defendant's Motion to Strike Plaintiff's Emergency Motion for Injunctive Relief and Sanctions</u> is denied. <u>Plaintiff's Emergency Motion for Injunctive Relief</u> is granted.[2]

**BACKGROUND**

The underlying action arises from an alleged breach of contract by Defendant. Plaintiff alleges that Defendant failed to pay for computer software development services rendered by Plaintiff. Plaintiff filed an <u>Emergency Motion for Injunctive Relief</u>. The case was referred to the Magistrate Judge late Friday afternoon on February 23d, and an injunction hearing was scheduled for Monday, February 26th. <u>Defendant's Motion to Strike Plaintiff's Emergency Motion for Injunctive Relief and Sanctions</u> was filed Monday at the commencement of the hearing. Due to the eleventh hour receipt of Defendant's motion, we proceeded with the hearing and took the motion under advisement.

---

[2] Around 4 p.m., on Tuesday, February 27, 2001, defense counsel was advised telephonically of the Court's decision herein. Attempts to reach Plaintiff's counsel were unsuccessful. Defense counsel orally requested and was granted a bond hearing. The bond hearing was scheduled for Wednesday, February 28, 2001.

2

## **DEFENDANT'S MOTION TO STRIKE**

Defendant seeks to strike the motion for injunctive relief because it is assertedly based solely upon statements made during the course of settlement discussions. Defendant's motion seeks to strike a certain exhibit to "<u>Plaintiff's Emergency Motion for Injunctive Relief</u>", <u>to-wit</u>: a February 15, 2000 letter by defense counsel to Plaintiff's counsel, and to bar the testimony at trial of witness Jim Drier to the extent that he testifies about statements made between the parties during settlement negotiations. We will examine these issues separately.

Defendant cites Federal Rule of Evidence 408 (hereafter "Rule 408") and <u>Kritikos v. Palmer Johnson, Inc.</u>,[3] as authority which precludes the admissibility of statements made during the course of settlement discussions. Rule 408 reads as follows:

> Evidence of **(1)** furnishing or offering or promising to furnish, or **(2)** accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromising negotiations. **This rule also does not require exclusion when the evidence is offered for another purpose**, such as proving bias or prejudice of

---

[3] 821 F.2d 418 (7th Cir. 1987).

3

a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.[4]

**The letter from Defendant's counsel is admissible for purposes other than liability.** As noted earlier, attached to Plaintiff's <u>Emergency Motion for Injunctive Relief</u> is a letter dated February 15, 2001 from Ms. Susan Booker, Defendant's attorney, to Mr. Mitchell Jones, Plaintiff's attorney. **The letter indicates that Defendant is expecting to sell its operating assets within the next ten to fourteen days.** The letter also includes an offer of a cash settlement for Plaintiff's contract claim. Defendant asserts that pursuant to Rule 408, this letter is not admissible evidence in an injunction hearing because settlement discussions between parties are inadmissible.

**The applicable case law allows for the admissibility of the letter.** The purpose of Rule 408 is to encourage settlements.[5] Rule 408 "forbids the introduction of settlement offers to prove or disprove liability; however, **it explicitly permits the introduction of such offers for other purposes.**"[6] Under Rule

---

[4] Fed. R. Evid. 408 (emphasis added).

[5] <u>Central Soya Co., Inc. v. Epstein Fisheries, Inc.</u>, 676 F.2d 939, 944 (7th Cir. 1982).

[6] <u>CNA Financial Corp. v. Brown</u>, 162 F.3d 1334, 1338 (11th Cir. 1998) (emphasis added) (settlement offer could be produced to show that party was engaging in a "service" under the Lanham

4

408, the Court has broad discretion when deciding whether to admit evidence of settlement that is offered for "another purpose".[7] The Court should weight the necessity of the evidence against the potential for discouraging future settlement discussions.[8]

The letter is clearly relevant to and probative of Plaintiff's claim that irreparable harm will occur absent injunctive relief. Because Defendant Authentix Network, Inc. is expected to have its operating assets sold within the next few days time is of the essence and a stay maintaining the status quo is essential. According to the evidence presented by the Plaintiff at the injunction hearing, included within the assets that the Defendant intends to sell is the intellectual property and confidential work product of the Plaintiff. Under the terms and provisions of the Software Development Agreement between the parties, the Plaintiff retains all ownership rights to its

---

Act); see also Cochenour v. Cameron Savings & Loan, 160 F.3d 1187, 1190 (8th Cir. 1998) (settlement letter may be properly introduced to rebut testimony); Carney v. American Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998) (settlement letter may be used to establish an independent violation, in this case, retaliation in a discrimination case); Board of Trustees of Knox County Hosp. V. Shalala, 135 F.3d 493, 501 (7th Cir. 1998) (even assuming that Secretary's decision on a prior matter constituted a settlement, it would be admissible to rebut the Secretary's assertions).

[7] Starter Corp. v. Converse, Inc., 170 F.3d 286, 293 (2d. Cir. 1999).

[8] Id.

5

intellectual property until the property is paid for by the Defendant. Defendant has yet to fully pay for all of the Plaintiff's intellectual property received by it. Plaintiff maintains that if and when the sale occurs it will lose all opportunity to recover and retrieve its intellectual property from the new owner.

Our decision to permit the statements at issue to be introduced into evidence is consistent with <u>Kritikos</u>, the case cited by Defendant. <u>Kritikos</u> involved a contract for the custom manufacture of a yacht. In <u>Kritikos</u>, the trial court found in favor of the Defendants, partially due to the admission of two letters which were admitted over the Plaintiff's Rule 408 objections. On appeal, the United States Court of Appeals for the Seventh Circuit held that the trial judge "improperly used the letters and the statements made therein **as a substantive basis** for finding the Plaintiff primarily responsible for the delays."[9] We think <u>Kritikos</u> stands for the proposition that a settlement letter cannot be used as a substantive basis for a finding of liability (or non-liability). In this respect it is consistent with our decision and consistent with the other cases we have cited.

As noted earlier, the injunction hearing was held on February 26, 2001. Only one witness, Jim Drier, was called by

---

[9] <u>Kritikos</u>, 821 F.2d at 423 (emphasis added).

Plaintiff. Defendant did not call any witnesses and did not present any documentary evidence.

Jim Drier, Plaintiff's Vice-President of Sales and Marketing, testified concerning his telephone conversations with Mr. Winn, a representative of Defendant. In the course of his discussions with Mr. Winn, Mr. Drier learned that the Defendant intended to sell its business and assets. At all relevant times, Mr. Drier was told that all sums of money due and owing to the Plaintiff would be paid to the Plaintiff out of the proceeds of the sale. Ms. Booker's letter of February 15, 2001 was contrary to all prior representations of the Defendant to the Plaintiff. The letter reads in pertinent part as follows:

> Dell Winn of Authentix has advised me that Authentix has received a Term Sheet providing for the sale of Authentix's operating assets. **It is anticipated that the sale will close some time in the next ten to fourteen days**. At this time there are some funds available to pay trade creditors. **There is doubt that after closing there will be funds available to pay the debts of trade creditors who do not settle prior to the sale closing**.[10]

Whereas before the position of the Defendant had always been that the Plaintiff would receive all sums of money due and owing to it from the proceeds of the sale, Ms. Booker's letter was to the contrary, and informed the Plaintiff that the sale would not generate enough proceeds to pay all of the Defendant's creditors

---

[10] Exhibit, "_Plaintiff's Emergency Motion for Injunctive Relief_" (emphasis added).

and, therefore, the Plaintiff would not receive all monies due and owing to it. The Defendant's change in position triggered the filing of Plaintiff's motion for injunctive relief.

### FINDINGS OF FACT.[11]

1. Jim Drier is Vice-President of Plaintiff.

2. On or about June 3, 1999, the parties entered into a <u>Software Development Agreement</u> and amended the agreement on November 9, 1999.

3. Defendant retained Plaintiff to design and develop certain computer software for Defendant. Included within the intellectual property designed and delivered to the Defendant was certain specially designed software.

4. In order to complete the project, Plaintiff did all the work.

5. Plaintiff has worked 3200 hours on the project.

6. Based on the original project plan, Defendant should have contributed forty-four percent of the time (1408 hours). Instead, Plaintiff performed the work. This arrangement was acceptable to Defendant.

7. At Plaintiff's lowest billing rate of $125 per hour,

---

[11] Facts 1-22 are taken from the Aff. Of Jim Drier which was attached to Plaintiff's emergency Motion for Injunctive Relief. Mr. Drier also testified at the preliminary injunction hearing and was subject to cross-examination by Defendant.

the additional work contributed by Plaintiff on Defendant's behalf totals $176,000 (1408 hours x $125 per hour).

8. Plaintiff has made demand for payment of the sum, but Defendant has failed to pay.

9. To date, Plaintiff has invoiced and Defendant has paid for milestones 1.1a, 1.1b, and 2.1a.

10. Pursuant to the agreement, Plaintiff has completed and Defendant has accepted milestones 2.1b and 2.2a. Defendant has agreed that the value of these milestones is $90,000. Defendant agreed to pay for milestone 2.2a, but has failed to do so.

13. The agreement further provided that Plaintiff would be paid for all work performed through the date of termination.

14. The date of termination was defined as the date 30 days after the receipt of notice of termination.

15. Plaintiff received a notice of termination from Defendant on January 27, 2000.

16. The date of termination would be February 26, 2000.

17. Plaintiff ceased all work for Defendant by February 3, 2000.

19. As of February 3, 2000, Plaintiff had completed seventy-five percent of milestone 2.2b.

20. The value of the milestone 2.2b work totals $30,000.

21. Plaintiff has made demand for payment of the sum but Defendant has failed to pay the sam.

9

**22.** The value of the work performed by Plaintiff is in excess of $290,000.

**23.** As of February 15, 2001, Defendant was anticipating that it would close on a sale of its operating assets approximately between February 25th and March 1st, 2001.[12]

**24.** If this sale of operating assets closes, it is doubtful that funds would be available to satisfy a settlement with or a judgment against Defendant.[13]

## CONCLUSIONS OF LAW

**1.** Any of the foregoing Findings of Fact which may be deemed a Conclusion of Law is hereby adopted as a Conclusion of Law. Any of the following Conclusions of Law which may be deemed a Finding of Fact is hereby adopted as a Finding of Fact.

**2.** The Magistrate Judge has jurisdiction of the parties and the cause.

**3.** Four factors are relevant to whether a preliminary injunction should issue: **(1)** the Plaintiff's likelihood of prevailing on the merits of his claim; **(2)** whether the Plaintiff would suffer irreparable harm absent an injunction because the remedy at law would be inadequate; **(3)** the harm to the Defendant if the injunction were granted as balanced against the harm to

---

[12] See Feb. 15, 2001 Letter attached to Plaintiff's Emergency Motion for Injunctive Relief.

[13] Id.

the Plaintiff if it were not; and **(4)** the public interest, or the effect that granting or denying the injunction would have on third parties.[14] The stronger the case on the merits, the less irreparable harm must be shown.[15] Likelihood of success and irreparable harm must be established before moving on to the final two factors.[16] While weighing the interests of the parties and the public interest in deciding whether to grant or deny an injunction, the court should seek to minimize the costs of being mistaken.[17] The party seeking injunctive relief has the burden of establishing all four factors.[18]

4. Affidavits and other evidence not admissible at trial may be considered at the injunction hearing.[19] Where affidavits

---

[14] MacDonald v. Chicago Park Dist., 132 F.3d 355, 357 (7th Cir. 1997); Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1114 (7th Cir. 1997); Erickson v. Trinity Theatre, Inc., 13 F.3d 1061, 1067 (7th Cir. 1994).

[15] Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1172 (1997); Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314 (7th Cir. 1994).

[16] MacDonald, 132 F.3d at 357; Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F.3d 1287, 1291 (7th Cir. 1996).

[17] Storck, 14 F.3d at 314; Abbott Lab. V. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992).

[18] Erickson, 13 F.3d at 1067; Grossbaum, 63 F.3d at 585.

[19] Securities & Exchange Comm'n v. Cherif, 933 F.2d 403, 412 n. 8 (7th Cir. 1991) (hearsay may be considered); Illinois ex rel Hartigan v. Peters, 871 F.2d 1336, 1342 (7th Cir. 1989) (affidavits may be considered); Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26 (1st Cir. 1986) (hearsay may be considered).

have not been denied or contradicted by opposing affidavits or evidence, the affidavits must be accepted as true.[20] Because no controverting evidence has been submitted by Defendant, we must accept as true the facts contained in Jim Drier's affidavit.[21]

5. **Plaintiff will likely succeed on its contract claim.** At this point, it is undisputed that Plaintiff has performed some software development work for which it has never been paid. At trial, we believe it is likely that Plaintiff will be able to show that it has performed some work pursuant to the contract for which it has not been paid.

6. **Plaintiff has adequately demonstrated irreparable harm.** The very sale of Plaintiff's intellectual property is in and of itself irreparable harm. In addition, Plaintiff fears that if Defendant's assets are sold; Defendant will dissolve; and Plaintiff will have no recourse on its contract claim. Plaintiff's fear that a sale is imminent is further substantiated by the February 15, 2001 letter from Defendant's counsel to Plaintiff's counsel which states that Defendant received a Term Sheet providing for the sale of Defendant's assets that is expected to close before the end of February.

7. **The balance of harms weighs in favor of Plaintiff.** The

---

[20] O'Connor v. Board of Educ. Of Sch. Dist. 23, 449 U.S. 1301, 1302 (1980).

[21] Id.

12

remedy of setting up a reserve fund that could be used to satisfy pending litigation presents little harm to Defendant, while the prospect of not granting a temporary restraining order presents great harm to Plaintiff, which might lose its intellectual property rights while not even being paid for its extensive efforts.

8. **The public interest favors injunctive relief**. The public interest is served when disputes are resolved through either settlement or adjudication on the merits. By granting a preliminary injunction, we will preserve the likelihood of settlement or adjudication on the merits.

**Accordingly, it is adjudged, decreed and recommended as follows:**

1. Defendant's Motion to Strike Plaintiff's Emergency Motion for Injunctive Relief and Sanctions is denied.

2. Plaintiff's Emergency Motion for Injunctive Relief, which we treat as a motion for issuance of a preliminary injunction is granted.

3. Defendant is hereby preliminarily enjoined from conveying its operating assets, including Plaintiff's intellectual property and the work product developed by Plaintiff under the agreement, to a third party unless and until an adequate reserve fund is established for the benefit of Plaintiff pending resolution of the litigation.

13

**4.** Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must find their objections to the <u>Report and Recommendation</u> with The Honorable Marvin E. Aspen within 10 days after being served with a copy of the <u>Report</u>. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's <u>Report</u>.[22]

**So Recommended.**

Dated: February 28, 2001

*W. Thomas Rosemond, Jr.*
W. Thomas Rosemond, Jr.
United States Magistrate Judge

---

[22] <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538 (7th Cir. 1986). <u>See also</u>, <u>The Provident Bank v. Manor Steel Corp.</u>, 882 F.2d 258, 261 (7th Cir. 1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or §636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's Report).